IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DANIEL W. JAMISON, ) | |
| Plaintiff, ) | Civil Action No. 7:18-cv-00504 |
| ) | |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| HAROLD W. CLARKE,[1] *et al.*, ) | United States District Judge |
| Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiff Daniel W. Jamison, a Virginia inmate proceeding *pro se*, has brought this lawsuit alleging civil rights violations and asserting a federal claim pursuant to 42 U.S.C. § 1983, as well as a state law claim based on the Virginia constitution. In general terms, he claims that he has been diagnosed with celiac disease, which he describes as a "pre-[cancerous] digestive disorder," and that he also has an allergy to chicken, in addition to a number of other medical issues. The treatment for his celiac disease includes a gluten-free diet. Jamison alleges that, during his time at both Nottoway Correctional Center ("Nottoway") and Dillwyn Correctional Center ("Dillwyn"), the Virginia Department of Corrections ("VDOC") failed to provide him with a gluten-free diet and that various defendants have failed to treat him for his celiac disease by refusing to require a gluten-free diet or otherwise interfering with his receiving such a diet. He alleges that he suffered significant physical symptoms and pain as a result.

There are currently twenty-two motions pending before the court. This opinion addresses all but one of them, grouping some together by type of motion.[2] Before turning to the pending motions, the court provides a brief overview of the relevant facts.

---

[1] Although plaintiff spelled the first defendant's name as "Clark," the correct spelling is Clarke. The Clerk will be directed to correct the style of the case accordingly.

[2] To the extent any of these motions are currently referred to Untied States Magistrate Judge Joel C. Hoppe, the clerk will be is directed to withdraw the reference for them.

# I. FACTUAL BACKGROUND

From March to May 2018, Jamison was housed at Nottoway, and he was thereafter transferred to Dillwyn, where he was housed from May 2018 until August 2019.[3] He alleges that, at both institutions, he was denied a gluten-free diet. Specifically, he claims that at Nottoway, he was repeatedly advised that the facility did not offer a gluten-free diet and he was not given one. Then, after that initial delay, he was at one point prescribed a gluten-free diet at Dillwyn, but then was removed from that diet after he purchased items containing gluten from the commissary. He also alleges that, even when he was supposed to be receiving a gluten-free diet, defendants working in food service were not providing it.

According to defendants, Jamison was placed on a chicken-free and gluten-free diet when he arrived at Dillwyn in May 2018, and his original diet order (but also including an allergy to eggs) was "renewed" in September 2018. (Morgan Aff. ¶¶ 5–6 and Enclosures B & C thereto, Dkt. No. 74-2.) At least as of June 2019, defendants state that Jamison is being provided with a diet that is free of poultry, eggs, and wheat. Specifically, they offer sworn testimony that he is "receiving a regular tray with substitutions" for the wheat, poultry, and egg items, but he is instead picking up a regular tray which contains bread items three times daily. Thus, defendants contend that staff at Dillwyn provided meals to meet his medical needs, but he chose not to pick up those meals and instead is taking food that, if eaten, would be inconsistent with his medical orders. (Morgan Aff. ¶ 12.)

Jamison's original complaint contains three counts. The first alleged that the denial of medical care and lack of a gluten-free diet violated his Eighth Amendment right to be free from cruel and unusual punishment. The second is the same basic claim but is brought pursuant to the

---

[3] Subsequent to his filing this case, Jamison was transferred to Deerfield Correctional Center, which is where he is currently housed.

Eighth Amendment of the Virginia constitution. Count III of his complaint is a separate request for declaratory and injunctive relief.

Jamison's original complaint names twenty-one defendants, all named in both their individual and official capacities. These include individuals who are part of VDOC's central offices (such as the VDOC's Director and its Chief Medical Officer), as well as medical staff, nutritional staff, and the wardens and other correctional officers at both Nottoway and Dillwyn. (*See generally* Dkt. No. 1.)[4]

## II. DISCUSSION

**A.   Motion for Leave to File Amended Complaint**

After all but one of the medical defendants had filed motions to dismiss, Jamison filed a motion for leave to file an amended complaint (Dkt. No. 43). In his proposed amended complaint ("the supplemental complaint"), he seeks to add four new defendants and thirteen new counts against all of the original and new defendants. He filed that motion within 21 days after being served with motions under Rule 12(b) by some defendants and within 21 days after other defendants answered, and Jamison correctly notes that, because of that timing, he is entitled to amend his pleading "as a matter of course." Fed. R. Civ. P. 15(a)(1)(B). Accordingly, the court will grant his motion to amend (Dkt. No. 43). However, because Jamison is proceeding *in forma pauperis*, and any amended complaint is therefore subject to screening, the court reviews his claims to determine whether they should be permitted to go forward in this lawsuit. 28 U.S.C. § 1915(e)(2)(B).

   1.  Assault Against Dr. Ohai

Upon initial review of his supplemental complaint, the court concludes that only one of

---

[4] The court refers to medical staff at both institutions as "the medical defendants." All remaining defendants are referred to collectively as "the VDOC defendants."

the claims therein is sufficiently alleged against an existing defendant so as to allow it to remain in this case. Specifically, Count V in the supplemental complaint (which will now be Count IV in this case), a claim of assault against Dr. Paul Ohai,[5] who is already a defendant. *See* Fed. R. Civ. P. 18(a) (allowing a plaintiff to join "as many claims as it has against *an opposing party*"). The court will not sua sponte dismiss this claim, given the factual allegations in the amended complaint. The remainder of his claims, as discussed next, fail to state a claim against any existing defendant.

2. Remaining Claims

Jamison's remaining claims in the supplemental complaint are titled by him (with spelling corrections by the court) as follows:[6]

- retaliation against due process;
- discrimination against someone with disabilities (an Americans with Disabilities Act ("ADA") claim);
- failure to act;
- mail tampering;
- hindering litigation and due process;
- perjury;
- destruction of medical documents and tampering; and
- conspiracy.

Although Jamison names all of the existing defendants as to these claims, he fails to allege with any specificity any personal action by any of the existing defendants or any new facts (in addition to what was in the original complaint) to state a viable claim against any of them.[7]

---

[5] The proposed amended complaint names all defendants in all counts, but the facts alleged in the complaint do not allege any assault by any other defendant, so this claim will be permitted against Dr. Ohai only and dismissed against all other defendants.

[6] The court lists the claims in a different order than they appear in the supplemental complaint.

[7] There are fleeting references in his original complaint to retaliation against some defendants, but he did not originally assert a retaliation claim. The court will not undertake an examination of his 46-page complaint merely to guess at which allegations therein he intended to include as part of a retaliation claim referenced only in his proposed amended complaint. Any retaliation claim he pleads in any new lawsuit must include all of the

4

Instead, the only new allegations naming any original defendant (aside from the assault allegation against Dr. Ohai) are that Nurse Morgan allegedly retaliated against Jamison by threatening him with segregation or medical observation, she generally does "everything in her power . . . to stand in the way" of Jamison's health and well-being, and she engages in name-calling and degradation.[8]

While Jamison may be able to state sufficient facts to state a First Amendment retaliation claim against Nurse Morgan, the vague and general allegations he alleges in his amended complaint are insufficient. *See Adams v. Rice,* 40 F.3d 72, 74 (4th Cir. 1994) (finding that inmate must present more than conclusory allegations of retaliation). Jamison fails to allege facts connecting any specific adverse action by Nurse Morgan to his lawsuit. Thus, this claim will be dismissed without prejudice.

The court has also considered carefully Jamison's claim of discrimination in violation of the ADA. It concludes, however, that Jamison has failed to state a claim upon which relief can be granted and thus that this claim is subject to dismissal.

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A state prison is a "public entity" within the meaning of the ADA, and, as such, Title II of the ADA is applicable to state prisons. *Pa. Dep't of Corr. v. Yeskey,* 524 U.S. 206, 210 (1998); *see also United States v. Georgia*, 546 U.S. 151, 154 (2006). To prevail on his

---

allegations in a single document, clearly indicate which allegations support that claim, and be brought against any defendant based on his or her own actions.

[8] Jamison also states that he has tried numerous times to speak to the Warden, Assistant Warden, and Major at Dillwyn, but he does not indicate that any of those individuals knew he wanted to speak with him or that they refused to speak with him in retaliation for his filing grievances or this lawsuit.

claim under Title II of the Americans with Disabilities Act, Jamison must allege that: "(1) he has a disability; (2) he is otherwise qualified to receive the benefits of a public service, program or activity; and (3) he was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of his disability." *Spencer v. Early*, 278 F. App'x 254, 261 (4th Cir. 2008) (quotation omitted).

Jamison makes a blanket assertion of "discrimination" based on disability, but he does not identify any specific program or activity from which he has been excluded, as necessary to state a claim under Title II of the ADA. Instead, it appears that he is relying on the same allegations set forth in his original complaint that underlie his Eighth Amendment claim. It is well established, however, that an inmate's medical treatment, or lack of treatment, does not provide a basis upon which to impose liability under the ADA. *See Burger v. Bloomberg,* 418 F.3d 882, 883 (8th Cir. 2005); *Bryant v. Madigan,* 84 F.3d 246, 249 (7th Cir. 1996); *see also Spencer v. Easter,* 109 F. App'x 571, 573 (4th Cir. 2004). Because his complaint fails to adequately allege facts to state an ADA claim, his ADA claim will be dismissed without prejudice.

As to Jamison's "failure to act" claim, the amended complaint does not point to any specific facts in support of this claim. To the extent the claim is based on an alleged failure to provide adequate medical care, however, those allegations are already before the court as part of his Eighth Amendment claim, and there is no basis for an independent "failure to act" claim.

The remaining claims—mail tampering, hindering litigation and due process, perjury, destruction of medical documents and tampering, and conspiracy—fail to state a claim against any existing defendant and cannot be joined in this lawsuit against the newly proposed defendants. As to the existing defendants, as already noted above, there are no new factual allegations supporting these claims as to any of those defendants, nor any personal action

6

alleged by them related to these claims.

As to the new defendants Jamison seeks to add, Rule 20 allows the joinder of defendants *only* if the claims arose out of the same transaction or occurrence, or series thereof, *and* contain a question of fact or law common to all the defendants. Fed. R. Civ. P. 20(a)(2). Thus, if the claims arise out of different transactions or do not involve common questions of fact or law as to all defendants, joinder of the claims in one lawsuit should not be allowed. *Riddick v. Dep't of Corr.*, No. 7:17CV00268, 2017 WL 6599007, at *1 (W.D. Va. Dec. 26, 2017) ("[A] plaintiff may name more than one defendant in a multiple claim lawsuit only if the claims against all defendants arose out of the same incident or incidents and involve a common factual or legal question.") (citation omitted). "These procedural rules apply with equal force to *pro se* prisoner cases." *Id.*

Jamison's claims involving mail tampering, tampering with legal or medical documents, or other alleged acts of retaliation and general "conspiracy" against the new defendants do not satisfy Rule 20's requirements for joinder because they do not arise out of the same occurrence or series of occurrences as Jamison's existing claims against the existing defendants, and they do not contain a question of fact or law common to all the defendants. Accordingly, those claims may not be brought in this same lawsuit and will be dismissed without prejudice at this time.[9] If Jamison wants to proceed with those additional claims against the defendants in this case or any other defendants, he may file a new complaint in a new civil action that must stand alone and not incorporate by reference or rely on any documents filed in this case. Jamison is advised that

---

[9] In addition, to allow plaintiff to pay one filing fee, yet join disparate legal claims against multiple parties concerning multiple different events and factual and legal issues, would fly in the face of the letter and spirit of the PLRA's restrictions, which include requiring full payment of the filing fee, authorizing the court's review of claims, and the "three strike" provision. *See generally* 28 U.S.C. §§ 1915, 1915A. "Congress enacted the PLRA with the principal purpose of deterring frivolous prisoner litigation by instituting economic costs for prisoners wishing to file civil claims." *Lyon v. Krol*, 127 F.3d 763, 764 (8th Cir. 1997).

any new complaint must state specifically what each named defendant did or failed to do that he believes violated his constitutional rights. That is because liability under § 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (internal citation omitted). Thus, a § 1983 claim requires factual detail about each defendant's personal involvement. *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (explaining that liability will lie under § 1983 only "where it is affirmatively shown that the official charged acted personally" in the violation of plaintiff's rights and affirming dismissal of claim where plaintiff did not allege personal involvement by defendant) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)).

In light of the foregoing, the clerk will be directed to docket the document currently docketed at Dkt. No. 43 as a supplemental complaint, but the court will allow only the assault claim against Dr. Ohai to go forward in this case. Dr. Ohai will be directed to file a supplemental answer or responsive pleading as to that claim not later than thirty days after entry of this order. All remaining claims in the proposed amended complaint against all other defendants will be dismissed without prejudice, and Jamison may assert them in a separate lawsuit, after complying with all filing requirements.

The court turns now to the other motions in this case.

**B.      Motions for Extension of Time**

Jamison's two motions for extension of time to file a response to the motions to dismiss (Dkt. Nos. 39, 41), will be granted. His later-filed responses will be deemed timely filed and considered by the court. In his third pending motion for extension, Jamison requests that he be permitted an extension of time to file a response to the VDOC defendants' "Answer." No such response or reply is required or needed, so that motion for extension of time (Dkt. No. 40) will be denied as unnecessary.

**C.      Motions to Dismiss**

There are three pending motions to dismiss, all filed by different medical defendants, and they contain a number of overlapping arguments.[10] The first is a motion to dismiss by Dr. Leon Dixon, Dr. Young, and Dr. Ohai (Dkt. No. 33); the second was filed by P. McCabe, C. Morgan RNCB, and Nurse Ford (Dkt. No. 34); and the third was filed by Nurse House (Dkt. No. 59). Jamison has responded to all of them.

1. Legal Standard – Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the nonmoving party." *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano*, 521 F.3d at 302. *Pro se* complaints are afforded a liberal construction. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006).

2. Eighth Amendment

"It is beyond debate that a prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019). To demonstrate deliberate indifference, an

---

[10] In addition to the arguments addressed herein, the medical defendants also move for the dismissal of all claims against them in their official capacities, although they cite to nothing for support and do not distinguish between claims for monetary damages and claims for injunctive relief in making this argument. The court will deny that portion of the motion to dismiss without prejudice. Defendants may renew it, with appropriate authority and argument, at the summary judgment stage.

9

inmate must show that (1) he has a medical condition that has been "diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention" and (2) the defendant "had actual knowledge of the plaintiff's serious medical needs and the related risks, but nevertheless disregarded them." *Id.* at 356–57. The first component is an objective inquiry; the second is subjective. *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017).

   3. Failure to Provide Appropriate Diet and Properly Treat Celiac Disease

One of primary contentions in all of the motions to dismiss is that Jamison's claim for failure to provide a gluten-free diet fails because an inmate has no constitutional right to a gluten-free diet as a matter of law. For support, defendants cite to *Prien v. Smith*, 411 F. App'x 982, 984 (9th Cir. 2011), and *Witschi v. N.C. Dep't of Public Safety*, No. 1:14-cv-68-FDW, 2014 WL 3735135, at *2 (W.D.N.C. July 29, 2014), *appeal dismissed*, No. 14-7240 (4th Cir. Sept. 17, 2014). Neither of these cases supports dismissal here.

*Prien* is a two-paragraph, unpublished, out-of-circuit decision affirming the grant of summary judgment in defendants' favor, and does not state or stand for the proposition that gluten-free diets need not be provided to prisoners as a matter of law. 411 F. App'x at 984. In *Witschi*, the district court dismissed the complaint where the plaintiff alleged that he was not being fed his medically ordered diet, one designed to accommodate his food allergies. 2014 WL 3735135, at *2. The court noted that to prevail on his claim, the plaintiff would have to show that he was not provided with adequate nourishment to sustain his health. *Id.* Because plaintiff had not done so and, in particular, because he had not "alleged any specific facts indicating that his health [had] deteriorated" or "that he was suffering from any serious medical condition," he had failed to state a claim. *Id.*

Rather than a blanket assertion that a specific type of diet is never constitutionally

10

required, the Fourth Circuit has explained that an Eighth Amendment claim in these circumstances can be stated by allegations that the prisoner "lost weight *or* suffered other adverse physical effects *or* was denied a nutritionally and calorically adequate diet." *Wilson v. Johnson*, 385 F. App'x 319, 320 (4th Cir. 2010) (emphasis added) (quoting *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999)). In *Wilson*, the court reversed the district court's sua sponte dismissal of an inadequate food claim, noting that the prisoner's allegations of "inadequate food portions and that he suffered physically by losing weight and experiencing stress as a result of being underfed on a daily basis" were sufficient to survive review under § 1915A. 385 F. App'x at 320; *King v. Lewis*, 358 F. App'x 459, 460 (4th Cir. 2009) (reversing district court's dismissal of complaint where prisoner alleged that he suffered "physically due to periodic pain associated with hunger" and "mentally because [he] cannot focus on his rehabilitation he must continue to worry" about the lack of food).

Defendants have submitted the declaration of Dr. Ohai indicating that plaintiff did not suffer any significant loss of weight during his time at Dillwyn. Defendants suggest that this fact alone requires dismissal of Jamison's claims, but the court disagrees.

As a preliminary matter, to consider Dr. Ohai's declaration concerning Jamison's lack of weight loss would convert the motion to dismiss into a motion for summary judgment, which the court declines to do at this juncture, and cannot do without giving notice to Jamison that the court will be doing so and an opportunity to respond. *See.* Fed. R. Civ. P. 12(d), 56(f). In any event, the absence of weight loss is not necessarily determinative of plaintiff's conditions-of-confinement claim. Plaintiff alleges that the food he ate caused him—and continues to cause him—substantial pain and significant, recurring physical symptoms, including frequent blood in his stool, vomiting blood, severe and painful cramping, diarrhea, lethargy from the "serious lack of nutrients and vitamins," and "horrible headaches." (*See, e.g.*, Compl. 26.) Generally the fact

11

that a prisoner has not lost weight would suggest that he received nutritionally adequate meals. In this case, though, the allegations in the complaint are sufficient to state a plausible claim that the refusal to provide Jamison with a gluten-free diet has resulted in "adverse physical effects" sufficient to state a "serious medical condition." *Wilson*, 385 F. App'x at 320. Thus, the medical defendants' primary argument does not entitle them to dismissal.

    4. Other allegations of "negligence" by physicians

The medical defendants claim that the only other allegation of negligence is that the physicians prescribed medications that were contraindicated for a person with celiac disease. Jamison counters by pointing to a number of other allegations of negligence in his complaint. Claims of negligence or medical malpractice are not cognizable in a § 1983 proceeding. *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976); *Sosebee v. Murphy*, 797 F.2d 179, 181 (4th Cir. 1986). Thus, claims based merely on negligence are not actionable under the Eighth Amendment and subject to dismissal.

To the extent that the identified actions or omissions of the defendants are alleged to be part of defendants' deliberate indifference toward Jamison's celiac disease, they are part of the same Eighth Amendment claim. This includes his allegation that the physicians prescribed a medication, omeprazole, the generic form of Prilosec, which he contends contains gluten and should not be prescribed for someone with celiac disease.

For the foregoing reasons, this motion to dismiss will be denied.

    5. Nurses Cynthia Morgan, Padraig McCabe, Wileen Ford, and House

In addition to other arguments already addressed above, the four nurses contend that they should be dismissed because the complaint contains nothing other than conclusory allegations without specificity as to them. The allegations as to each of them are fairly scant, but Jamison alleges, at least in general terms, that all four of them personally knew of his serious medical

12

need (his celiac disease and need for gluten-free food) and in some way interfered with it or failed to provide him treatment at some point. (Compl. 16, 17, 20, 21–22.) He also makes some additional allegations as to all of them except McCabe. For example, he alleges that Ford refused to put his celiac disease or any reference to a wheat allergy on his intake form. He alleges that Morgan, along with Dr. Ohai, removed him from the gluten-free diet he was temporarily receiving, after he told her that he had purchased—but then traded, rather than eating—items containing gluten from the commissary. Nurse House refused to treat him at one point when he was brought to medical after vomiting in the kitchen, and another time, she refused to test his vomit for blood and instead incorrectly stated—and falsely wrote in his records—that the substance in the vomit was soup, not blood. McCabe, after being informed of Jamison's needs and his symptoms, simply wrote to him that the facility did not have a gluten-free diet and he should "check with dietary when he transferred."

While Jamison's claims against the nurses ultimately may not be sufficient to survive summary judgment, they state a plausible claim for the denial of medical care under the Eighth Amendment. Given the severity of his alleged symptoms, which included not only significant pain, but frequent vomiting with blood in the vomit and blood in his stool, it is at least plausible that he had a "serious medical condition" and that the nurses' refusal to treat him or interference with his receiving a gluten-free diet could give rise to an Eighth Amendment violation.

All three motions to dismiss will be denied.

### D.     Motions Seeking Stays of Discovery

The medical defendants have filed a motion requesting that discovery be stayed until a ruling on their motions to dismiss. In light of the court's denial of the motions to dismiss, those motions (Dkt. No. 49, 56) will be denied as moot. Likewise, Jamison's response in opposition to those requested stays, docketed as a motion (Dkt. No. 57), will be denied as moot.

The medical defendants shall respond to all discovery previously propounded to them not later than thirty days after entry of this opinion and order. The Medical Defendants also shall file a motion for summary judgment, supported by affidavits, not later than sixty days after entry of this opinion and order.

**E.      Motion for Default Judgment**

Also pending before the court is Jamison's motion for default judgment against all defendants. For the reasons set forth in the responses in opposition to that motion (Dkt. Nos. 54, 55), none of the defendants are in default. Instead, they all timely either answered the complaint or timely filed motions to dismiss under Rule 12(b)(6). Thus, his motion for default judgment (Dkt. No. 53) will be denied.

**F.      First Motion for Preliminary Injunction**

On June 7, 2019, Jamison filed a motion for preliminary injunction (Dkt. No. 61.) In it, he requests that the court enter a preliminary injunction requiring defendants to provide a gluten-free diet and for VDOC to provide medically appropriate and timely care for his serious medical condition to include gastrointestinal and pain management doctors. The medical defendants and the VDOC defendants have filed separate memoranda opposing his motion. (Dkt. Nos. 73, 74.)

Preliminary injunctive relief is an "extraordinary" remedy that courts should grant only "sparingly." *See Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991). The party seeking the preliminary injunction must demonstrate that: (1) he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008); *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 249 (4th Cir. 2014). The remedy may be granted only on a "clear showing" of entitlement to relief. *Winter*, 555 U.S. at 22.

Here, it appears that subsequent events in the case have mooted Jamison's request for preliminary injunctive relief. First of all, approximately one month after that motion became ripe, Jamison notified the court that he had been moved from Dillwyn to Deerfield, where he is currently incarcerated.[11] More recently, he has notified the court that he is now receiving a gluten-free diet, per the order of VDOC's director of health, defendant Mark Amonette. (Dkt. No. 99 at 2.) Jamison's latest filing also refers to his appointment with outside providers in November 2019. (Dkt. No. 99 at 2.) In light of those developments, it appears to the court that Jamison's first motion for preliminary injunction is moot. The court notes, however, that because it is not clear whether the order for a gluten-free diet is guaranteed to remain in place, these developments do not moot any claim for *permanent* injunctive relief. *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982) ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.").

For these reasons, Jamison's motion for preliminary injunctive relief (Dkt. No. 61) will be denied without prejudice as moot. In the event that Jamison believes some of the relief he requested in his motion still has not been received or if, while this case is pending, he is again denied a gluten-free diet, then he may file a renewed motion for preliminary injunction setting forth specifically what he wants the court to order in terms of relief.

---

[11] Jamison's transfer from Nottoway to Dillwyn (where he was housed at the time of the preliminary injunction) means that injunctive relief is not available against any of the Nottoway defendants. Likewise, his transfer from Dillwyn to Deerfield, approximately one month after the motion for preliminary injunction became ripe, means that preliminary injunctive relief is not available against the Dillwyn defendants, either. Instead, the transfer or release of a prisoner generally renders moot any claims for injunctive or declaratory relief relating to the former place of confinement. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (concluding that prisoner's transfer rendered moot his claims for injunctive and declaratory relief); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987) (holding that transfer of a prisoner rendered moot his claim for injunctive relief); *Taylor v. Rogers*, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986) (holding that transfer made moot claim for injunctive relief).

## G. Miscellaneous Motions by Jamison

Jamison also has filed a number of other motions. In Docket Number 58, Jamison complains that he has not been permitted to make the necessary number of copies of his legal filings or to be permitted to pay for legal mail because his inmate account has a negative balance. He asks the court to provide an order directing the Dillwyn correctional staff to allow him to make copies as necessary to prosecute his case, despite his negative balance in his prison account. (Dkt. No. 58 at 2.) To the extent he attempted to raise these allegations as a new claim in his proposed amended complaint, he may file such claims in a new lawsuit if he desires. Moreover, since he filed that motion, Jamison has filed a number of motions with this court and has been able to communicate with the court. Thus, it appears from the record that these problems have resolved. Accordingly, his motion (Dkt. No. 58) will be denied without prejudice at this time.

Another two of Jamison's motions are motions to initiate criminal investigations. (Dkt. Nos. 93, 95.) It is well established, however that private citizens can neither bring a direct criminal action against another person nor petition the federal courts to compel the criminal prosecution of another person. *See Maine v. Taylor*, 477 U.S. 131, 137 (1986); *Leeke v. Timmerman*, 454 U.S. 83, 86–87 (1973). Accordingly, those motions (Dkt. No. 95) also will be denied.

Jamison also has filed several documents asking the court to hold various defendants in contempt of court for falsifying public records, asking that the court require various defendants or defense counsel to show cause why they should not be criminally investigated, and asking that all professional licenses held by counsel or defendants be suspended. The allegations underlying most of these motions are that false statements were made to the court in affidavits or other filings. Again, to the extent he is asking for criminal investigations or criminal charges, he has

16

no right to pursue such relief. Similarly, the suspension of a professional licenses is generally handled by the state board who issues those licenses and is not relief this court would typically grant in the context of a civil rights action.

Insofar as he requests that defendants be held in contempt, civil contempt is clearly inapplicable here, and the court finds no basis for holding any of the defendants in contempt of court.[12] To the extent that Jamison's motions can be interpreted as a request for sanctions, the court has reviewed those motions and the oppositions thereto. Many of Jamison's disagreements are with legal assertions made by defendants in their filings, and those statements do not provide a basis for imposing sanctions. Jamison also accuses some defendants of committing perjury.

As to Dr. Ohai, he points out specific statements in Dr. Ohai's declaration that Jamison either contends are false based on Jamison's own knowledge or asserts are contradicted by his medical records. (*See, e.g.*, Dkt. No. 65.) He also requests that the court hold a formal hearing and subpoena documents or other information to prove that Dr. Ohai's declaration is false. In response, Dr. Ohai notes that—even if false—those statements cannot constitute perjury because they are either statements of opinion or are not material and because there is no evidence that Dr. Ohai willfully lied, also an element of the criminal perjury statute. *See* 18 U.S.C. § 1623.

Having reviewed the various statements that Jamison alleges are perjured, the court

---

[12] In order to find a person in civil contempt, the person moving for a contempt finding must prove each of the following elements by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge;
>
> (2) that the decree was in the movant's "favor";
>
> (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and
>
> (4) that [the] movant suffered harm as a result.

*Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (citation omitted).

17

determines that sanctions are not appropriate and so declines to impose any sanction against any defendant. Accordingly, those motions (Dkt. Nos. 65, 77, 78, 88, 89) will be denied. The court will, however, give Jamison an additional opportunity to file a supplemental response to the VDOC defendants' pending motion for summary judgment, in which he may present any additional evidence, in the form of affidavits or otherwise, to contradict Dr. Ohai's statements.

**H.      Second Motion for Preliminary Injunction**

On January 6, 2020, Jamison filed a request for an emergency injunction in which he asks the Court to "stop and eliminate the furtherance of criminal actions, mail fraud and tampering, larceny, and to include cons[pirac]y, against the plaintiff." (Dkt. No. 96 at 1.) Defendants have responded and oppose the motion. (Dkt. Nos. 97, 98.)

As noted above, preliminary injunctive relief is an "extraordinary" remedy that courts should grant only "sparingly." *See Direx Israel, Ltd.*, 952 F.2d at 811. Moreover, an interlocutory injunction is not appropriate when the harm complained of does not arise from the harm alleged in the complaint. *Omega World Travel v. TWA*, 111 F.3d 14, 16 (4th Cir. 1997). The movant thus must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint. *Id.*; *see In re Microsoft Antitrust Litig.*, 333 F.3d 517, 526 (4th Cir. 2003). "[A] preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action." *Omega World Travel*, 111 F.3d at 16; *see Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994).

Jamison's recent motion for preliminary injunctive relief relates to the claims that he sought to add in this case, but which the court is not permitting him to add (tampering with mail, etc.). They are not sufficiently linked to the claims in the underlying complaint or the added assault claim to satisfy the relationship required by *Omega World Travel*. Accordingly,

Jamison's second motion for preliminary injunction (Dkt. No. 96) will be denied. He may seek such relief in any new case or cases he files asserting the related claims.

III.  CONCLUSION

An appropriate order will be entered setting forth the above rulings, as well as directing additional briefing on the one motion that remains pending—defendants' motion for summary judgment.

Entered: February 10, 2020.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge