IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

DANIEL W. JAMISON,                    )
                                      )
            Plaintiff,                )     Civil Action No. 7:18-cv-00504
                                      )
      v.                              )     **MEMORANDUM OPINION**
                                      )
MARK AMONETTE, *et al.*,              )     By: Hon. Thomas T. Cullen
                                      )         United States District Judge
            Defendants.               )

In this 42 U.S.C. § 1983 action, Plaintiff Daniel W. Jamison ("Jamison") raises a host of claims against numerous defendants, including Virginia Department of Corrections ("VDOC") employees and medical providers at both Dillwyn Correctional Center and Nottoway Correctional Center. This case was originally assigned to United States District Judge Elizabeth K. Dillon, and she entered several opinions and orders that significantly narrowed the claims and parties before transferring what remained to the undersigned. Relevant here, Judge Dillon concluded that there were genuine disputes of fact as to Jamison's "Eighth Amendment deliberate indifference claim against Dr. Ohai based on his failure to treat Jamison's celiac disease beginning in July 2018 . . . ," the sole claim left in the case. (Mem. Op. pg. 36, Mar. 15, 2021 [ECF No. 148] (hereinafter "Mem. Op.").) Her rulings also retained Dr. Mark Amonette, VDOC's Chief Medical Director, as a defendant, solely for purposes of implementing any injunctive relief in the event a jury sided with Jamison on his Eighth Amendment claim.

Pending before the court are two motions. First, Dr. Ohai has filed a motion *in limine* to exclude Jamison's proffered experts for untimely and inadequate disclosures. Second, Dr.

Ohai has filed a renewed motion for summary judgment. The court also asked the parties to brief whether Jamison's claims for injunctive relief were mooted by subsequent events because, if they were, Dr. Amonette would no longer be a proper defendant.

All these issues were fully briefed and were argued before the court at a January 7, 2022 hearing. For the reasons discussed below, the court will grant the motion *in limine* and exclude Jamison's expert witnesses. The court also will grant Dr. Ohai's renewed motion for summary judgment. In light of those rulings, requests for injunctive relief are no longer appropriate. Therefore, the court will dismiss defendant Amonette and need not consider whether Jamison's request for an injunction is moot. All other pending motions will be denied as moot.[1]

# I.   BACKGROUND

## A. Factual Background

The factual background of the case is set forth in some detail in Judge Dillon's March 15, 2021 Memorandum Opinion. (ECF No. 148.) It is not necessary, however, to include much of that background in order to address the issues currently before the court. In broad terms, Jamison alleges that he has suffered from celiac disease for the entirety of his time in VDOC's custody, and that Dr. Ohai was deliberately indifferent toward that serious medical

---

[1] At the conclusion of the January 7 hearing, Jamison's counsel advised that Jamison wanted a ruling on a prior motion he filed *pro se* before counsel entered an appearance on his behalf. (*See* ECF No. 160.) Dr. Amonette responded to that motion (ECF No. 163), and the assigned United States Magistrate Judge entered an oral order (ECF No. 171) denying it as moot because it sought discovery in the event that Jamison was unable to obtain counsel. At that point, it was counsel's responsibility to propound discovery or schedule depositions, which was most of the relief sought in the motion. The motion also asked for a transfer to Dillwyn Correctional Center. Even if not mooted by counsel's appearance, that relief was not appropriate in this case. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976) (noting that prisoners have no inherent constitutional right to placement in a particular prison); *Wetzel v. Edwards*, 635 F.2d 283, 288 (4th Cir. 1980) (explaining that the decision about where to house any particular inmate is generally committed to the discretion of the state's prison officials, and a federal court must show deference to such decisions).

need, in violation of Jamison's Eighth Amendment rights.

Judge Dillon's opinion relied on secondary sources of medical information that Jamison submitted, presumably forecasting admissible expert testimony at trial. According to those sources, celiac disease is "an autoimmune disorder" in which gluten—a protein found in wheat, rye, barley, and other grains—"triggers immune system activity that damages the lining of the small intestine. Over time, this damage prevents the absorption of nutrients from food." (Mem. Op. pgs. 2–3 (cleaned up).) "[E]stablishing an accurate diagnosis can be difficult" because "the symptoms mimic those of many other digestive disorders." (*Id.* at 3 (cleaned up).)

Jamison was transferred from Nottoway Correctional Center to Dillwyn Correctional Center in mid-May 2018, and he was seen by Dr. Ohai shortly after his arrival. Jamison alleges that, based on information he conveyed to Dr. Ohai as well as symptoms he reported and documentation in his medical file,[2] Dr. Ohai should have known he had celiac disease and should have ordered that Jamison be placed on a strict gluten-free diet.

For his part, Dr. Ohai—at least initially—appears to have credited Jamison's reported history of celiac disease and directed Jamison to avoid eating foods containing gluten. Dr. Ohai asserts in his latest affidavit that, at that time, he did not believe VDOC offered a gluten-free diet, and he points to some VDOC policies to support that position. (2d Supp. Decl. of Paul C. Ohai ¶¶ 9–10, Nov. 22, 2021 [ECF No. 208].) After the lawsuit was filed, however,

---

[2] This includes documentation from a June 29–30, 2018 emergency room visit and a celiac antibody lab report issued on August 2, 2018, for a specimen drawn on July 27, 2018. In his latest declaration, Dr. Ohai explains his interpretation of the emergency room records. (2d Supp. Decl. of Paul C. Ohai ¶¶ 1–5, Nov. 22, 2021 [ECF No. 208].) He also states that he did not order the celiac antibody lab test, did not know that it had been ordered, and "did not review the lab report at the time of [his] treatment of Jamison." (*Id.* ¶ 6.)

Dr. Amonette ordered that Jamison receive a gluten-free diet while Jamison was undergoing testing to confirm his celiac diagnosis. After his diagnosis was later confirmed, VDOC continued Jamison on that diet, and the Acting Director of VDOC has filed an affidavit indicating that VDOC will continue to provide Jamison with a gluten-free diet for the entirety of his time in VDOC custody.[3] (Aff. of A. David Robinson ¶ 6, Nov. 22, 2021 [ECF No. 203-1].)

### B. Procedural Background

The procedural history of the case is even more important than the factual background is to the court's resolution of the issues before it. Jamison filed his initial *pro se* complaint in October 2018. In February 2020, Judge Dillon denied motions to dismiss and addressed numerous other motions, including motions to amend. (ECF No. 101.) In April 2020, the parties began conducting discovery, and Dr. Ohai provided discovery responses to Jamison in April 2020. (ECF No. 113.) In September 2020, Judge Dillon granted a motion for summary judgment filed by VDOC defendants, except she left Dr. Amonette in the case for purposes of injunctive relief. (ECF Nos., 135, 136.) In March 2021, after Judge Dillon denied summary judgment as to the one claim against Dr. Ohai, the case was set for trial before Judge Dillon, to begin on January 4, 2022. (ECF No. 150.) Judge Dillon did not enter a separate order setting a deadline for designating experts at that time. Thus, pursuant to Federal Rule of Civil Procedure 26(a)(2)(D), Jamison was to designate his experts 90 days before the trial, *i.e.*, by October 6, 2021, with any "contradiction or rebuttal disclosures" by defendants due 30 days

---

[3] Jamison contends that he is not receiving a proper gluten-free diet at his current place of incarceration. (*See generally* ECF No. 212.)

thereafter.

Three new counsel entered the case in 2021. First, at the end of January, current counsel for Dr. Amonette replaced prior counsel, and a second attorney entered an appearance on his behalf in June. In July 2021, Jamison, who until that point had been proceeding *pro se*, obtained counsel, and new counsel replaced Dr. Ohai's prior counsel. The parties then engaged in mediation with the Hon. Joel C. Hoppe—in June and September 2021—but they were not successful in resolving the case.

In the meantime, on August 10, 2021, Judge Dillon transferred the case to the undersigned. This court kept the January 4, 2022 trial date. (ECF No. 193.) On October 13, 2021, the court issued a pretrial scheduling order, which included deadlines for discovery. (*Id.*) Discovery was set to close on November 22, 2021, 45 days prior to trial. Although it did not include a deadline for expert designations, the parties were to move to exclude expert witnesses not later than 28 days before trial.

In a November 5, 2021 conference call with counsel, after the court indicated that it did not want to postpone the trial any further, there was a discussion about expert deadlines. Both in the call and in an oral order entered the same day, the court directed the parties to confer and propose an amended scheduling order to the court by November 9, 2021. Thereafter, the parties submitted an agreed-upon amended trial order, which the court entered on November 9, 2021. That order set Jamison's expert designation deadline for November 23, and defendants' for December 7. (ECF No. 200).

On November 20, 2021, three days before his expert designation deadline, Jamison moved to continue the trial. (ECF No. 202.) His motion explained that counsel did not have

time for an expert to review and provide a written report by the November 23, 2021 deadline. The motion also asserted that there was "not enough time between now and the currently scheduled jury trial" for Jamison and counsel "to meet the significant fee requirements outlined by the proposed medical expert witness." (*Id.* at 4.)

The court denied that motion on November 22, 2021. (ECF No. 204.) The court explained that the trial had been set since March 2021, giving the parties months to prepare, and that counsel for Jamison had entered the case in July 2021 and had approximately four months to obtain an expert and to prepare for trial, which should have been sufficient time. (*Id.* at 4.) The court also noted that this case had been pending for over three years, and that a postponement of trial was not warranted simply "because a party (or all parties) miscalculated the likelihood of a settlement and failed to continue preparing for trial." (*Id.* at 4.)

Importantly, Jamison never moved for an extension of his expert deadline. Instead, on the day his expert disclosures were due (November 23), Jamison filed an expert designation that identified the name of one retained expert—Dr. Myung Whan Choi (Scott), M.D.— without identifying the subject matter or substance of his opinions. Jamison's counsel emailed a copy of the Dr. Choi's *curriculum vitae* ("CV") to defense counsel, but did not provide a signed written report, testimony list, or statement of compensation to be paid, as required by Rule 26(a)(2)(B). That same day, Jamison also identified non-retained treating providers. (ECF No. 205.)

The next day, Dr. Ohai filed a motion for summary judgment. In part, Dr. Ohai argued that Jamison had failed to provide timely and proper complete designations for his experts, and that without expert testimony, summary judgment was appropriate. The summary

judgment motion also presented testimony from Dr. Ohai as to several factual issues that Judge Dillon's prior opinion on summary judgment had noted were unclear.[4] After that motion was filed, Jamison's counsel emailed a draft report from Dr. Choi to defendant's counsel and explained that Dr. Choi was making a few corrections and edits. She also sent a fee schedule.[5] As of the January 7, 2022 hearing, Jamison still had not provided Dr. Choi's finalized report to defendants, nor had Jamison's counsel sought any relief from the court, such as moving for an extension of time, moving to file out-of-time, or otherwise making any attempt to rectify his late disclosures or his continuing failure to provide the final report.

On November 30, 2021, the court entered an order *sua sponte* continuing the trial, noting that it would take some time to complete briefing on the new motions and for the court to rule on the summary judgment motion (which, if granted, would mean that no trial would be required). The court also stated that the continuance would allow the court to consider the issue of whether injunctive relief had been mooted by VDOC's providing Jamison with a gluten-free diet. (*See generally* ECF No. 209.) Given the grounds for summary judgment, the court was aware at that time that Dr. Ohai contended Jamison had failed to disclose his experts timely or properly. In continuing the trial, the court specifically noted that "all remaining pretrial deadlines, if not keyed to the trial date, are otherwise suspended." (ECF No. 209 at 2.) Because Jamison's expert deadline had already passed, that deadline was not affected by the continuance order. And, as noted, Jamison never sought an extension of that deadline.

---

[4] *See supra* note 2.

[5] No party has indicated whether plaintiff has ever provided a list of cases in which Dr. Choi has testified. His CV does not include that information. (*See* ECF No. 215-1.)

## II.   ANALYSIS

### A. Dr. Ohai's Motion to Exclude Plaintiff's Experts

In his motion to exclude, Dr. Ohai first moves to exclude the opinions of Dr. Choi, a non-treating physician offered by Jamison as an expert on celiac disease and causation. Dr. Ohai also moves to exclude all of Jamison's listed experts who were treating physicians: two from "VCU Health Systems and MCV Hospitals and Physicians" (Stephen J. Bickston, M.D. and George B. Smallfield, M.D.); and "Berkeley Family Medicine."[6] Dr. Ohai seeks exclusion pursuant to Federal Rule of Civil Procedure 37(c)(1), which provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1).

As to Dr. Choi, Dr. Ohai argues that Jamison failed to provide complete or timely disclosures. With regard to the treating physicians, he contends that Jamison's designation, although timely, did not comply with Rule 26(a)(2)(C).

The disclosure requirements applicable to expert witnesses differ for treating and non-treating physician experts. Rule 26(a), in relevant part, requires that a party disclose any expert witness it may use at trial. Fed. R. Civ. P. 26(a)(2)(A). The rule provides that the disclosures for non-treating experts must be accompanied by a written report that has been prepared and

---

[6] No particular individual is identified as a witness from Berkeley Family Medicine. Dr. Ohai appears to interpret the expert designations as also identifying "VCU Health System" and "MCV Hospitals and Physicians" generally as experts. It appears to the court, though, that those are the places where Drs. Bickston and Smallfield are employed, not that plaintiff intends to offer other physicians from those entities.

signed by the witness. Fed. R. Civ. P. 26(a)(2)(B). The report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

*Id.*

Because they are not typically "retained or specially employed to provide expert testimony," treating physicians are not ordinarily required to file Rule 26(a)(2)(B) expert reports. *See Perkins v. United States,* 626 F. Supp. 2d 587, 590 (E.D. Va. 2009). But a party seeking to introduce treating physician testimony as expert testimony must still comply with Rule 26(a)(2)(C). That provision requires the disclosure to state "(i) the subject matter on which the witness is expected to present evidence . . . ; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

1.  *Dr. Choi*

Under the terms of the agreed-upon amended scheduling order, Jamison's expert disclosures were due on November 23, 2021. As noted, on that date Jamison's counsel emailed Dr. Choi's CV to defendants' counsel. Jamison also e-filed his expert designation that same day, which did list Dr. Choi, but did not include a signed report, a fee schedule, or any other information. Jamison did not provide a report or the fee schedule until the following day—*after* Dr. Ohai had filed his summary judgment motion noting that Jamison had failed to designate an expert properly. And the report that Jamison's counsel emailed was a *draft* expert

report, which apparently had errors, including factual ones.[7] The email stated that the expert was "correcting a few things" and counsel had been "waiting to receive the corrected version before sending." (Email from Sherman-Stoltz to Fessier, Nov. 24, 2021 [ECF No. 215-2, at 1].) As of the January 7, 2022 hearing, however (approximately six weeks *after* the expert deadline), Jamison still had not provided Dr. Choi's final report.

Rule 37 governs sanctions for failure to abide by the applicable discovery rules, and although Rule 37's exclusion rule has been described as "self-executing," *Rambus, Inc. v. Infineon Tech. AG*, 145 F. Supp. 2d 721, 724 (E.D. Va. 2001) (citation omitted), it has two exceptions. Rule 37 does not bar undisclosed evidence if the failure to disclose was either "substantially justified" or "is harmless," and the non-disclosing party bears the burden to make that showing. *Bresler v. Wilmington Trust Co.*, 855 F.3d 178, 190 (4th Cir. 2017). In determining whether to excuse a party's failure to disclose, the court considers the five factors outlined in *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592 (4th Cir. 2003) ("*Southern States*").[8] Those factors are: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of the party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the explanation for the party's failure to disclose the evidence; and (5) the importance of the evidence. *S. States*, 318 F.3d at 596–97. Factors (1), (2), (3), and (5) relate "mainly to the harmlessness exception," while factor (4)

---

[7] Neither party has provided a copy of the draft report.

[8] Some courts have analyzed a failure to timely identify experts as a failure to comply with a scheduling order under Federal Rule of Civil Procedure 16(f), although often when a case is in its early stages. *See Thompson v. United States*, No. 7:14-cv-00092, 2015 WL 2412249, at *4 (W.D. Va. May 21, 2015). Regardless, the test under either rule is substantially the same. *Id.* at *4 n.5 (citation omitted).

relates "primarily to the substantial justification exception." *Id.* at 597.

Considering all of these factors, the court concludes that Dr. Choi's testimony should be excluded. First, as to the factors of surprise to Dr. Ohai and his ability to cure, Jamison contends that there is no surprise to Dr. Ohai, and thus the ability to cure is also a "non-factor." Since the trial has now been postponed, Jamison argues that there is ample opportunity for Dr. Ohai to depose Dr. Choi and that additional time could be given for Dr. Ohai to identify any of his own experts, all of whom will be relying on the same medical records and reports. Jamison also argues that the disruption to the trial is minimal given its postponement.

Jamison's analysis of the *Southern States* factors ignores the real consequences resulting from his failure to disclose Dr. Choi's opinions timely and properly. As to the first two factors, it is noteworthy that Jamison still has not provided a finalized report. Dr. Ohai may not have been surprised by the fact that Dr. Choi was identified as an expert, but he still does not know what Dr. Choi's finalized opinions are or the bases for them. So, there remains some surprise to defendants. Moreover, as Dr. Ohai's counsel noted at the hearing, defendants should not have had to forecast his case (by filing for summary judgment after receiving inadequate disclosures), only for Jamison to move the target again, modifying initially deficient disclosures and providing them at some (unspecified) later date. Additionally, the discovery deadline had already passed by the time the court continued the trial. While the court could re-open discovery and allow for limited discovery—such as the deposition of Dr. Choi—there is still prejudice to defendants if the court were to allow Dr. Choi's opinions. Indeed, at this point, his finalized opinions and report have *still* not been provided to Dr. Ohai, increasing the

prejudice and decreasing the ability to cure. *See Samsung Elecs. Co. v. Nvidia Corp.*, 314 F.R.D. 190, 198 (E.D. Va. 2016) ("[N]otice at a deposition is insufficient to cure a failure to disclose materials that ought to have been included in the expert report because disclosure in the right form (complete) and at the right time (with the expert report, before the expert's deposition) is critical to an opposing party's ability to engage in meaningful expert discovery.").

Further, given that this case originated in 2018, and the trial was approximately six weeks away when Jamison's expert was disclosed and a draft report provided, any cure would require a re-opening of discovery and trial being delayed even longer in order to alleviate the prejudice to Dr. Ohai. But this case already has been pending for more than three years and all parties would be prejudiced by another delay.

The third factor—disruption of trial—also favors exclusion. Although the trial has been postponed, the primary reason that the trial was postponed was because Dr. Ohai moved for summary judgment *after* Jamison failed to properly identify his experts and, at least in part, in response to that failure.[9] Put differently, trial already has been disrupted by Jamison's failure and Dr. Ohai's natural and justified response to that failure.

And even if the third factor were lessened by the fact that there is not currently a firm trial date, the factor still leans in favor of exclusion, as the authority Jamison cited

---

[9] At the hearing, Jamison's counsel suggested that Dr. Ohai's *primary* reason for filing a summary judgment was to provide additional factual information that was not included in the first summary judgment motion, but could have been. For support that this was his primary reason, she pointed to the fact that the summary judgment memorandum devoted many more pages to that argument than it did to the argument that summary judgment was proper based on Jamison's lack of admissible expert testimony. As Dr. Ohai's counsel pointed out, however, the other ground for summary judgment is highly fact-intensive, while the failure to designate experts properly was far more straightforward. The fact that more pages were devoted to the factual issue, therefore, does not mean that the expert issue was secondary. Indeed, the supporting memorandum addresses the expert issue first.

acknowledges. (Pl.'s Opp'n to Mot. in Limine pg. 6, Jan. 3, 2022 [ECF No. 218] (citing *Sanchez Carrera v. EMD Sales, Inc.*, 402 F. Supp. 3d 128, 138 (D. Md. 2019), for the proposition that "when trial has not yet been scheduled, the factor concerning disruption of trial 'only leans slightly in favor of exclusion'").)

The fourth factor—the explanation given for the lateness of the draft report and the continued failure to provide the final report—also favors exclusion. Indeed, this factor is one that the court has considered carefully. Based on the entire record, the court concludes that there is no substantial justification for Jamison's failure to properly disclose Dr. Choi as an expert.

Jamison's counsel has offered puzzling and shifting explanations for her initial—and continuing—failures to provide a final report. As for why the draft report was a day late, and as to why only a draft report was initially provided, Jamison's counsel stated that she needed Dr. Choi to correct certain aspects of the report. In Jamison's summary judgment response, counsel stated that the expert's report was completed on November 26, 2021 (ECF No. 213 at 6), but acknowledges it was not provided to opposing counsel at that time (or at any point afterward, as far as the court is aware). At that point, Jamison's counsel said the filing of the summary judgment motion raised new issues that Dr. Choi would need to address. Jamison also repeatedly contends that the cancellation of trial "moots" arguments regarding Jamison's experts and their qualifications, but that argument is meritless. Jamison's expert designation deadline had expired *before* the court postponed the trial, and it is not revived or extended by the postponement. Nor is Jamison's failure to designate his experts properly and timely altered or excused by the trial date being postponed.

In Jamison's response to the motion to exclude, his counsel again acknowledges that she has still not provided a revised or finalized report. She states that, after the trial was cancelled on November 30, 2021, it "would not behoove Plaintiff to expend additional resources" by having Dr. Choi spend additional billable time reviewing the second motion for summary judgment, the additional affidavit from Dr. Ohai, and additional exhibits attached to the summary judgment motion to provide a supplemental report. (Opp'n to Mot. Limine pg. 10.)[10]

But none of counsel's explanations about why she has not provided a finalized report are logical or provide a "substantial justification" for the failure to meet the expert disclosure requirements. First, if the report was completed on November 26, 2021, as counsel states, then there is no valid reason for not providing that report to Dr. Ohai then, particularly in light of the fact that Dr. Ohai had just moved for summary judgment, in part, on not receiving a timely report. And even if the summary judgment motion raised new issues that Jamison needed Dr. Choi to address, the proper course would have been to provide the already completed report and follow up with a supplemental report as soon as it could be prepared. *Cf.* Fed. R. Civ. P. 26(e) (requiring supplementation of discovery generally); Fed. R. Civ. P. 26(a)(2)(E) (requiring supplementation of expert disclosures "when required under Rule 26(e)").

Second, although Jamison's counsel contends that Dr. Choi could not respond to the motion for summary judgment without spending additional time reviewing the documents or

---

[10] Counsel also has noted that Jamison has provided "timely and adequate disclosures on other matters pertaining to his case," which is irrelevant to whether there was a substantial justification for the failure here.

revising his report, Jamison responded to the summary judgment motion without getting any additional input from Dr. Choi. His summary judgment response did not include either an affidavit from Dr. Choi or any expert report (draft or otherwise). It is thus disingenuous to contend that Jamison was waiting to provide a more complete report from Dr. Choi in response to summary judgment when that was never done. Moreover, the additional factual information raised by Dr. Ohai's summary judgment motion is relevant only to the standard-of-care issue in the case, and Jamison's counsel has acknowledged that Dr. Choi opinions are *not* related to the standard of care.

Third, the postponement of trial did not justify stopping Dr. Choi from continuing his work—if more was needed. The expert disclosures were already late, and if Dr. Choi was going to respond to factual allegations in the summary judgment motion or provide a final or supplemental report, those things needed to be done promptly. Counsel's argument that the trial continuance meant it would not "behoove Plaintiff to expend additional resources" is not persuasive.

Fourth, counsel's repeated references to the cost of the report and of Dr. Choi's services do not excuse Jamison's disclosure failures. Expert witnesses are often expensive, but the costs of litigation and of experts do not relieve a party of his discovery obligations or of his obligation to present an expert when, like here, one is required to prove his case. (*See infra* Section II.B.4.) Jamison has not cited to any authority for the proposition that the cost of an expert justifies late or inadequate disclosures.

Weighing in Jamison's favor are the facts that at least a draft report was provided and that it was only one day late. But especially because a finalized report had not been provided

as of the hearing, this case is like many others in which an expert disclosure was not only late, but also deficient. *See, e.g., Campbell v. United States*, 470 F. App'x 153, 155–57 (4th Cir. 2012) (affirming the district court's decision to exclude the plaintiff's expert because he was disclosed five days late and because his report was inadequate under Rule 26(a)(2)); *Res–Care Inc. v. Roto–Rooter Servs. Co.*, No. 09–cv–3856, at *3, 14, 2010 WL 4072037, at *5 (N.D. Cal. Oct. 18, 2010) (excluding one of the defendant's experts and ordering the defendant to pay for the depositions of its three other experts because they were disclosed a day late, their reports were not produced until later, and other requirements of Rule 26(a)(2) were not met); *cf. Thompson v. United States*, No. 7:14-CV-00092, 2015 WL 2412249, at *7 (W.D. Va. May 21, 2015) (declining to exclude an expert where the disclosure was only one day late and the expert disclosure was otherwise complete, and contrasting those facts with the facts in *Campbell* and *Res–Care Inc.*).

As to the fifth *Southern States* factor, Dr. Choi's testimony is certainly important to Jamison's case, or at least to the causation aspect of his case. That factor supports allowing Jamison to call Dr. Choi as a witness (and perhaps imposing some lesser sanction than exclusion). But upon consideration of all the factors, the court cannot allow the importance of the testimony to override the serious and continuing failure of Jamison's counsel to abide by her disclosure obligations or to provide an adequate explanation for failing to do so. In sum, the court concludes that Jamison has failed to demonstrate that his failures were either harmless or substantially justified, and therefore it must exclude Dr. Choi's testimony.

### 2. *Treating Physicians*

Dr. Ohai also argues that Jamison's disclosures of his treating physicians failed to

comply with the requirements of Rule 26(a)(2)(C) in that they did not include the subject matters on which those physicians were expected to present evidence or a summary of the facts and opinions on which each witness was expected to testify. Jamison responds that his designation satisfied Rule 26(a)(2)(C). That designation stated, in relevant part: "The grounds for their opinions will be based on their treatment records, education, employment, experience, clinical experience, training, interaction with the Plaintiff, and review of the Plaintiff's medical records." (Pl.'s Expert Designation pg. 1 [ECF No. 205].)

While the disclosure requirements for treating physicians are less onerous than those required for non-treating experts, the disclosure must nonetheless (1) identify the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705, and (2) include a summary of the facts and opinions to which the witness is expected to testify. The Advisory Committee notes to the 2007 amendments to Rule 26 state that the rule was added to ensure that summary disclosures of the opinions—and the facts supporting them—would be provided as to expert witnesses who are not required to provide written reports (such as treating physicians). Fed. R. Civ. P. 26(a)(2)(C) advisory committee's notes to 2007 amendment.

As district courts within the Fourth Circuit have explained, "'to guard against the prejudice of unfair surprise on opposing parties, and for Rule 26(a)(2)(C) to have any meaning, summary disclosures must contain more than a passing reference to the care a treating physician provided.'" *Marr v. Abercrombie & Fitch Stores, Inc.*, No. 5:14-CV-00123, 2015 WL 3827326, at *4 (E.D.N.C. 2015) (quoting *Slabaugh v. LG Electronics USA, Inc.*, No. 1:12-CV-01020-RLY, 2015 WL 1396606 at *3 (S.D. Ind. 2015)); *O'Donnell v. Majors*, No. 7:19-CV-54,

2019 WL 3414402, at *1 (W.D. Va. July 29, 2019) (same). Both the *Marr* and *O'Donnell* courts explained that disclosures must, at a minimum, "clearly identify the witness, state the subject matter of the expected testimony, and summarize actual opinions." *O'Donnell*, 2019 WL 3414402, at *2 (quoting *Marr*, 2015 WL 3827326, at *4).

In *O'Donnell*, the disclosure was far more detailed than what Jamison provided here, and the court nevertheless found it lacking. *Id.* The *O'Donnell* court also noted that "production of medical records" does not constitute a disclosure describing "the subject matter on which a witness is expected to testify." *Id.* (collecting authority). Applying that authority here, it is clear that Jamison's disclosures of his treating physicians are woefully deficient. Jamison said those physicians will offer opinions based on "their treatment records," but provided no information as to what those "actual opinions" might be.[11]

Because of that inadequate disclosure, the court must again apply the *Southern States* factors to determine whether the non-disclosure was substantially justified or harmless. With regard to the surprise to Dr. Ohai and ability to cure any surprise, Dr. Ohai is entitled to at least a summary of "actual opinions," *id.*, which have not been provided. Again, there may be time to cure some of that prejudice or surprise, but Dr. Ohai cannot begin to do so without Jamison supplying additional information. Thus, these factors favor exclusion.

Analysis of the third factor—disruption to trial—is identical to the analysis for Dr. Choi and favors exclusion. As to the fourth factor, no justification has been given. Instead,

---

[11] At oral argument, Jamison's counsel suggested that despite this, the substance of the treating physicians' testimony and opinions should have been obvious to defendant's counsel—that, among other things, he has suffered from, and has been treated for, celiac disease. Even if opposing counsel could fairly draw those inferences from Jamison's "treatment records," it was incumbent on Jamison's counsel to describe, in general terms, what those opinions would be and explain the bases for them.

- 18 -

Jamison insists the disclosures were adequate.

As to the importance of the testimony, the opinions of those other physicians may be important, but it is impossible to tell without knowing what opinions they would offer. But even assuming that these opinions are very important to the case, Jamison has fallen well short of meeting his burden to establish either substantial justification or harmlessness. Thus, the court concludes that the testimony of treating experts designated by Jamison (with the exception of Dr. Ohai and Dr. Amonette, who defendant intends to call) must be excluded.

## B. *Dr. Ohai's Renewed Motion for Summary Judgment*

### 1. *Federal Rule of Civil Procedure 54(b)*

Jamison contends that Dr. Ohai's second summary judgment motion is governed by Federal Rule of Civil Procedure 54(b). (*See* Opp'n. to Mot. in Limine pg. 1 n.1 (stating that the documents Dr. Ohai relies upon in his second motion for summary judgment were all part of the record before the court when it ruled on his first motion for summary judgment.) In pertinent part, Rule 54(b) provides that "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

"[E]very order short of a final decree is subject to reopening at the discretion of the district judge," and reconsideration of such orders "are not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–515 (4th Cir. 2003) (citations omitted). Instead, "a court may

revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) 'a subsequent trial produc[ing] substantially different evidence'; (2) a change in applicable law; or (3) clear error causing 'manifest injustice.'" *Carlson v. Boston Scientific Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) (citations omitted). In the Rule 54(b) context, the first element is more accurately described as "potentially different evidence discovered during litigation." *Id.*

The Fourth Circuit has "consistently affirmed denials of motions to reconsider summary judgment rulings where the motion is merely a vessel for the very evidence that was initially lacking in opposition to summary judgment." *Id.* at 326. In *Carlson*, for example, the party seeking reconsideration provided additional portions of deposition testimony that were available "well before summary judgment briefing." *Id.* Under those circumstances, the district court did not abuse its discretion in denying summary judgment. *Id.; see also U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 257 (4th Cir. 2018) (reversing district court's grant of a Rule 54(b) motion as an abuse of discretion because the district court's "discretion is 'subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again'" and because the parties agreed that the district court's order did not depend on the identified "new evidence") (quoting *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 332 F.3d 147, 167 (2d Cir. 2003)). But the Fourth Circuit also has emphasized that, in considering whether to grant reconsideration under Rule 54, the district court must keep in mind that "[t]he ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." *Nadendla v. Wakemed*, No. 21-1300, 2022 WL 187835, at *2 (4th Cir. Jan.

- 20 -

21, 2022) (quoting *Am. Canoe Ass'n*, 326 F.3d at 515–16). Moreover, Rule 54(b)'s approach to interlocutory orders "involves broader flexibility to revise" orders "as litigation develops and new facts or arguments come to light." *Carlson*, 856 F.3d at 325.

Here, Dr. Ohai's motion for summary judgment raises an issue—the lack of experts—that could not have been raised at the time of the first summary judgment motion because the deadline for identifying experts had not yet been set, let alone passed, at that time. As Dr. Ohai correctly argues, Judge Dillon's opinion can be read as "forecasting" *potential* expert testimony in several respects, which now—especially after the court's ruling excluding Jamison's experts—does not exist and cannot be presented to the factfinder. Given these changes, the court concludes that, to the extent its ruling implicates Rule 54(b), it is appropriate to grant Rule 54(b) relief.[12]

### 2. *Federal Rule of Civil Procedure 56*

Under Rule 56 of the Federal Rules of Civil Procedure, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under

---

[12] Even if the court were to reach the opposite result—that Rule 54(b) does not authorize reconsideration based on these recent developments—the end result would be the same. Without expert testimony on the standard of care and proximate causation related to Jamison's complex medical condition, he can't carry his burden of proving, by a preponderance of the evidence, that Dr. Ohai was deliberately indifferent to his serious medical need. The court would therefore have no choice but to grant Dr. Ohai's motion for a judgment as a matter of law at the close of Jamison's case under Rule 50(a). It would be grossly inefficient to proceed to trial when that is a foregone conclusion.

the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986)).

When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam). To withstand a summary judgment motion, the nonmoving party must produce sufficient evidence from which a reasonable jury could return a verdict in his favor. *Anderson*, 477 U.S. at 248. "Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of the nonmoving party's case." *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (cleaned up).

3. *Plaintiff's Untimely Summary Judgment Response*

Before turning to the arguments of the parties as to summary judgment, the court first notes that Jamison's response to the summary judgment motion was filed 21 days after service of the motion, a week late. *See* W.D. Va. Civ. R. 11 (setting a fourteen-day response time for motions); Fed. R. Civ. P. 5(b)(2)(E) (where service is made by filing with the court's electronic-filing system, service is complete upon filing). Even though Dr. Ohai pointed this out in his reply (ECF No. 216, at 1 n.1.), Jamison has not filed a motion for extension of time. Thus, the response was not timely filed.

Even if Jamison had moved for an extension (either at the time he filed or after defendant pointed out the untimeliness of his response), that would have occurred after the original time expired. Extensions sought after the expiration of a deadline may be granted only "if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1). Excusable neglect is determined by reference to the factors set forth in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993): "[1] the danger of prejudice [to the non-moving party],

[2] the length of delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Pioneer,* 507 U.S. at 395. "The most important of the factors . . . is the reason for the [delay.]" *Thompson v. E.I. Dupont de Nemours & Co.,* 76 F.3d 530, 534 (4th Cir. 1996). "[T]he burden of demonstrating excusability lies with the party seeking the extension and a *mere concession of palpable oversight or administrative failure generally has been held to fall short of the necessary showing.*" *Id.* (emphasis in original).

When asked about the untimely response at the hearing, Jamison's counsel stated that she mistakenly thought she had 21 days to respond. This is not excusable neglect. *Batton v. Comm'cns Workers of Am., AFL-CIO*, No. 2:13cv426, 2014 WL 5742409, at *7 (E.D. Va. Aug. 4, 2014) (collecting authority showing that neither a lawyer's "carelessness" nor a "calendaring error" constitutes excusable neglect). Thus, the court could strike the brief and not consider its arguments or any of the referenced evidence. *See id.* at *11 (granting a motion to strike plaintiff's summary judgment response after applying the *Pioneer* factors to find that there was no excusable neglect). But the Fourth Circuit has recognized that district courts should endeavor, whenever possible, to decide dispositive issues on the merits, and the court will do so here. *Cf. Robinson v. Wix Filtration Corp., LLC*, 599 F.3d 403, 409 n.8 (4th Cir. 2010) (noting that the court must determine whether even an unopposed summary judgment motion is properly granted); *see Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 n.3 (4th Cir. 2010) (noting "the sound longstanding policy in favor of merits-based adjudication"); *see also Morris-Belcher v. Hous. Auth. of City of Winston-Salem*, No. 1:04CV255, 2005 WL 1423592, at *7 n.4 (M.D.N.C. June 17, 2005) (finding no excusable neglect and striking

untimely response but noting in a footnote that even if it had considered the untimely submissions, it would have reached the same result).

4. *Merits of Summary Judgment Motion*

Even considering Jamison's response, the court concludes that Dr. Ohai is entitled to summary judgment. "Under the Eighth Amendment, [convicted] prisoners have the right to receive adequate medical care while incarcerated." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018). An Eighth Amendment violation occurs when a correctional official "demonstrates 'deliberate indifference' to an inmate's serious medical needs." *Id.* (citations omitted).

A claim of deliberate indifference has two components. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry." *Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209 (4th Cir. 2017). "An official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively 'knows of and disregards an excessive risk to inmate health or safety.'" *Jackson*, 775 F.3d at 178 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). This is an "exacting standard," which requires more than "mere negligence or even civil recklessness." *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). To establish a constitutional violation, "it is not enough that an official *should* have known of a risk" to an inmate's health. *Id.* Rather, the official "must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.*

To constitute deliberate indifference, the treatment "must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental

fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837. "The subjective component therefore sets a particularly high bar to recovery." *Iko*, 535 F.3d 225, 241 (4th Cir. 2008).

Dr. Ohai's motion seeks summary judgment first on the grounds that Jamison has no expert on the standard of care. Dr. Ohai also contends that exclusion of Dr. Choi means that Jamison has no expert on his "condition"—*i.e.*, to describe celiac disease—or on causation. According to Dr. Ohai, the absence of admissible expert testimony on one or both of these subjects entitles him to summary judgment. This is because expert testimony is required on the issues of "[w]hether Jamison actually has celiac disease, whether he sustained an injury or exacerbation of his condition, or whether such injury or exacerbation was caused by Dr. Ohai's treatment (as opposed to Jamison's noncompliance or the natural progression of his disease.)" (ECF No. 207 at 6.) As already noted, the court has excluded Dr. Choi and Jamison's treating physicians as expert witnesses. Accordingly, Jamison has not pointed to *any* admissible expert testimony that could support his assertion that Dr. Ohai deviated from the standard of care in treating Jamison's symptoms, or that Dr. Ohai's treatment decisions caused him any damage.[13]

The court concludes that the absence of any expert to testify on the threshold standard of care or on the presence of an injury caused by Dr. Ohai is fatal to Jamison's Eighth Amendment claim. *See, e.g.*, *Miltier*, 896 F.2d at 852 (holding that a deliberate indifference case involving the adequacy of medical care requires an expert to establish the "threshold standard of medical care"); *Alberson v. Norris*, 458 F.3d 762, 765–66 (3d Cir. 2006) (affirming the grant

---

[13] Indeed, Jamison's response to the summary judgment motion failed to provide any expert testimony in any form to counter Dr. Ohai's arguments.

of summary judgment for medical defendants on a deliberate indifference claim and concluding that "[w]here the complaint involves treatment of a prisoner's sophisticated medical condition, expert testimony is required to show proof of causation"); *Hixson v. Hutcheson*, Nos. 5:17-CV-032 & 5:18-CV-001, 2019 WL 302516, at \*4 (W.D. Va. Jan. 23, 2019) (noting that a deliberate indifference claim involving a "complicated health condition" requires expert testimony "to show proof of causation of injury"). Even Jamison's counsel concedes that celiac disease and its attendant symptoms are complicated. (*See* Pl.'s Mot. Continue 4 ¶ 19 [ECF No. 202] ("Undersigned counsel strongly believes that Jamison's case requires the testimony of a medical expert. Celiac disease is not well known by the general public, and in the best interest of the plaintiff's case, the jurors need to have the medical aspects of the disease explained to them by a medical expert."). The court agrees, and concludes that an expert is required, at least as to the standard of care for treating possible symptoms of celiac disease. *See Watson v. Wash. Dep't of Corr.,* No. C17-5968-BHS-TLF, 2018 WL 7150488, at \*9 (W.D. Wash. Nov. 15, 2018) (concluding that prisoner's medical malpractice claim based on a failure to treat his celiac required expert testimony to establish the standard of care), *report and recommendation adopted sub nom. Watson v. Washington State Dep't of Corr.*, No. C17-5968 BHS, 2019 WL 399070 (W.D. Wash. Jan. 31, 2019), *aff'd,* 812 F. App'x 695 (9th Cir. 2020). *Cf. Scinto v. Stansberry*, 841 F.3d 219, 230 (4th Cir. 2016) (concluding that an expert was not required to explain to a jury the risks of failing to provide insulin to an insulin-dependent diabetic because it is well-known that diabetes is a "common yet serious illness that can produce harmful consequences if left untreated for even a short period of time").

In short, Jamison admits that he does not have a standard-of-care expert and,

regardless, the court has excluded all of his proffered experts. Thus, Jamison does not have an expert to offer requisite opinion testimony on either the standard of care for treating his complex condition or causation. In the absence of any expert testimony on these issues, the court concludes that Jamison has insufficient evidence from which a jury could find in his favor. Summary judgment for Dr. Ohai is proper, and Dr. Ohai's second summary judgment will be granted.[14]

## C.  Claims for Injunctive Relief

Because the court has granted Dr. Ohai's motion for summary judgment, there is no basis on which to award injunctive relief. In the absence of a constitutional violation, no relief—injunctive or otherwise—can be awarded by the court. *Horne v. Flores*, 557 U.S. 433, 450 (2009) ("[C]ourts must remain attentive to the fact that "federal-court decrees exceed appropriate limits if they are aimed at eliminating a condition that does not violate [federal law] or does not flow from such a violation.") (quoting *Milliken v. Bradley*, 443 U.S. 267, 282 (1977)); *Bacon v. City of Richmond*, 475 F.3d 633, 638 (4th Cir. 2007) (explaining that because "[o]ur legal system is built on the foundational principle that remedies are a means of redressing wrongs . . . a remedy must be tailored to a violation"). Accordingly, all claims for injunctive relief against Dr. Amonette will be dismissed.[15]

---

[14] Because the court does not have even the draft report for Dr. Choi, it is impossible to assess whether Dr. Choi would offer a standard-of-care opinion. At the hearing, Jamison's counsel insisted that Dr. Choi was not being offered as a standard-of-care expert. Confusingly, she then stated that Dr. Choi would be able to testify about the nature of celiac disease and the only proper treatment for it, which she insists is a gluten-free diet. But that puts the cart before the horse. Jamison still would need testimony from an expert to opine that, with the information Dr. Ohai had and the symptoms Jamison was exhibiting, Dr. Ohai should have known Jamison was suffering from celiac disease.

[15] As described *supra* at pg. 4 & note 3, VDOC has represented to the court that it will maintain Jamison on a gluten-free diet while he is in its custody, but Jamison complains that the diet he is being provided is not an adequate and proper gluten-free diet. Nothing in this opinion precludes Jamison from asserting new claims

### III.   CONCLUSION

For the reasons set forth above, the court concludes that Dr. Ohai's motion *in limine* (ECF No. 214) must be granted as to all of Jamison's proffered experts. The court further concludes that Dr. Ohai's second motion for summary judgment (ECF No. 206) should be granted due to his failure to provide vital expert testimony. In light of these rulings, all claims for injunctive relief are no longer viable, so Dr. Amonette is entitled to dismissal.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record, as well as directly to Mr. Daniel W. Jamison, Offender I.D. #1190078, at Deerfield Correctional Center, 21360 Deerfield Road, Capron, Virginia 23829.

**ENTERED** this 3rd day of February, 2022.

/s/ Thomas T. Cullen
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

related to alleged deficiencies in his current diet (including requests for injunctive relief) if he contends that other individuals have violated, or are violating, his constitutional rights.